IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JORDAN STAMPERD,

Plaintiff,

v. Case No. 2:24-cv-00731

WEXFORD HEALTH SOURCES, INC., *et al.*,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Defendant Wexford Health Sources, Inc.'s ("Wexford") Motion to Dismiss [ECF No. 24] and Plaintiff's Motion to Amend Complaint [ECF No. 35]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of these motions to the Magistrate Judge is **WITHDRAWN.** However, the matter shall otherwise remain referred to Magistrate Judge Tinsley.

**I. The Plaintiff's Allegations and Wexford's Motion to Dismiss**

Plaintiff has been diagnosed with Opioid Use Disorder ("OUD") and has been successfully treated with Medication for Opioid Use Disorder ("MOUD") in the past. According to Plaintiff's Preliminary Statement in support of his complaint, "MOUD is the standard of care for patients in jails and prison settings" and the "Food and

Drug Administration ("FDA") has approved three medications for treating OUD: methadone, buprenorphine (Suboxone), and naltrexone." [ECF No. 2 at 3, ¶ 11 and at 15, ¶ 83]. Plaintiff asserts, however, that "[t]hese medications are not the same and cannot be used interchangeably for every patient." [*Id.* at 15, ¶ 83].

Plaintiff alleges that he began receiving MOUD from a clinic in Pikeville, Kentucky in the summer of 2011. [*Id.* at 1, ¶ 1]. He alleges that he was prescribed Suboxone, which is "the only thing that took away his cravings and helped him steady out and stop using." [*Id.*] He further contends that "MOUD is necessary to address the serious risk of harm that patients like [Plaintiff] face from OUD." [*Id.* at 17, ¶ 95].

Although it is unclear when he was arrested and convicted, the complaint documents suggest that Plaintiff was housed at the Salem Correctional Center ("SCC") in or around December of 2021.[1] [ECF No. 2 at 4, ¶ 15]. While at SCC, he "failed a drug screening for Suboxone" and advised the staff that he had been taking Suboxone for several years and had taken it that day. [*Id.*] Plaintiff alleges that he was screened for OUD at SCC, but was denied any treatment and began suffering severe withdrawal symptoms. [*Id.*] He was then transferred to the McDowell County Correctional Center ("MCCC")[2] in March of 2022, where the denial of any treatment for OUD continued, his withdrawals worsened, and he allegedly relapsed. [*Id.*] Plaintiff alleges that he was housed at MCCC from March 2022 until he was

---

[1] Paragraph 15 of the Preliminary Statement alleges that Plaintiff was housed at SCC in December of 2022. [ECF No. 2 at 4, ¶ 15]. However, this appears to be a typographical error as it does not align with Plaintiff's other factual allegations concerning the location of his incarceration at that time.

[2] Although Plaintiff abbreviates this facility as "MCDO," the court will use "MCCC" herein.

transferred to the Huttonsville Correctional Center ("HCC") in January 2024. [*Id.* at 1, ¶ 2 and at 3, ¶ 9].

Plaintiff further contends that "relapses do not mean that MOUD is no longer medically required, but rather suggest the urgent need for treatment." [*Id.*, at 7, ¶ 35]. He asserts that his repeated requests for Suboxone while at MCCC were denied, with no medical reason given. [*Id.* at 8, ¶41]. He states that he was simply told that "they were not ever going to give any medication that would make the Plaintiff 'high[.]'" [*Id.*] Although Plaintiff obtained a court order that allegedly ordered that he receive Suboxone, Wexford, the contracted medical provider at MCCC, continued to deny him such treatment. [*Id.* at 1, ¶ 3, and at 8, ¶ 44]. Plaintiff avers, however, that, to "save face," Wexford ultimately prescribed him naltrexone. [*Id.* at 8-9, ¶ 45]. Plaintiff claims that, although approved as a form of MOUD, naltrexone "does not relieve withdrawal symptoms [and, in fact], it can trigger acute and severe withdrawal and an elevated risk of relapse." [*Id.* at 15, ¶ 87].

Plaintiff claims that his "intense cravings for opioids and withdrawals worsened" after taking naltrexone. [*Id.* at 8-9, ¶ 45]. Specifically, he contends that that he "experienced severe withdrawals every day without his medication, including heart palpitations, restless legs, severe muscle spasms, loss of emotions, severe pain in his back, and hallucinations." [*Id.* at 8, ¶ 43]. When he addressed the issue with Wexford staff, he was told "'it was too tough' because that was all he would ever get while at their facility." [*Id.* at 9, ¶ 45]. A Wexford doctor also allegedly told him, "it doesn't matter what your order says, you will never get your medication in this

facility." [*Id.* at 9, ¶ 48]. Plaintiff further contends that, once he was transferred to HCC in January of 2024, he delivered his court orders to the medical department (also run by Wexford) and he was given Suboxone. [*Id.*, ¶ 51].

On December 20, 2024, Plaintiff filed the instant complaint alleging that, while housed at MCCC, Wexford denied him MOUD, and specifically Suboxone, and caused him to relapse and "suffer weeks of intense drug abuse and weeks of intense physical and mental anguish due to constant cravings of opioids." [*Id.* at 2, ¶ 4]. The complaint alleges that Wexford's conduct violated Plaintiff's Fourteenth Amendment rights. [ECF No. 1 at 1, 3-4; ECF No. 2 at 24-25]. While the complaint documents do not clarify when Plaintiff was convicted, according to the Preliminary Statement, he was sentenced to a flat 10-year sentence for Armed Robbery in September of 2022. [ECF No. 2 at 4, ¶ 18]. Thus, it appears that Plaintiff may have been a pretrial detainee for a portion of the time about which he complains and was a sentenced prisoner for another portion thereof. He also may have been previously convicted and sentenced on prior charges. It is unclear from the complaint. Consequently, as discussed in greater detail below, it appears that Plaintiff's claims against Wexford could be governed by either the Fourteenth and Eighth Amendments and, at any rate, as addressed below, Plaintiff has alleged a plausible Eighth Amendment violation, so his motion for leave to amend his complaint to assert an Eighth Amendment claim is not futile.

According to Plaintiff, since May of 2022, Wexford has been the sole medical provider for all West Virginia Division of Corrections ("WVDCR") facilities, and at

MCCC, a facility that, at the time in question, was allegedly owned and operated by the McDowell County Commission. [ECF No. 2 at 5, ¶ 19]. Plaintiff further contends that "[i]t was the Defendants' policy or standard practice" to "forcibly withdraw[] people on MOUD even when the patient had previous prescriptions and with valid court orders." [*Id.* at 10, ¶ 53]. His Preliminary Statement further contends: "The Defendants' practice is to force people with OUD, including those being treated with buprenorphine (Suboxone) into what Wexford calls a 'supervised detoxification program for inmates who are chemically dependent.'" [*Id.*, ¶ 56]. He asserts that "[a]fter forced detoxification, the Defendants do not resume patients on Suboxone treatment, nor do they initiate these medications to people in their custody who would benefit even though they know that MOUD is the appropriate treatment for individuals with OUD." [*Id.*, ¶ 55]. He contends that "this practice is sharply at [odds] with the established standard of care of people with OUD" and is a "sadistic delay [that] has no basis in medicine." [*Id.* at 11-12, ¶¶ 57, 63].

Plaintiff further alleges that Defendants unreasonably and arbitrarily determined that he was "not a good candidate for MOUD" and, "[a]s a result of [their] deliberate indifference to his acute medical needs, and their cruel and medically unjustified OUD practices and policy, [Plaintiff] suffered weeks of severe pain and suffering and the return of his opioid cravings." [*Id.* at 12, ¶¶ 64, 65]. As relief, he seeks monetary damages, as well as a declaration that this conduct violated his federal constitutional rights. Plaintiff is no longer incarcerated.

On November 17, 2025, Wexford filed the instant Motion to Dismiss [ECF No. 24] and Memorandum of Law in support thereof [ECF No. 25]. Wexford first asserts that Plaintiff does not have standing to bring a Fourteenth Amendment claim because he was a sentenced prisoner whose claim would be governed, if at all, by the Eighth Amendment. [ECF No. 25 at 5]. Wexford further contends that the complaint fails to state any plausible claim against Wexford because it fails to sufficiently allege the existence of an unconstitutional policy or custom, as required by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), and alleges nothing more than his disagreement with the judgment of his medical providers concerning his course of treatment, which cannot support a deliberate indifference claim. [*Id.* at 5-10].

On December 8, 2025, Plaintiff responded to Wexford's motion. [ECF No. 30]. Wexford filed a reply on January 15, 2026. [ECF No. 34]. Then, on January 30, 2026, Plaintiff moved to amend his complaint to assert a violation of the Eighth Amendment. [ECF No. 35]. Wexford opposed that motion as being futile. [ECF No. 37]. Both motions are ripe for adjudication.

## II. Standard of Review

### A. Motions to Dismiss under Rule 12(b)(6)

Wexford's motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of simple possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

B. Motions to Amend Complaint under Rule 15

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings. Rule 15(a)(1) permits a plaintiff one opportunity, as a matter of course, to amend his or her complaint, subject to certain time limitations. Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2), on the other hand, provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court indicated that leave to amend a pleading should be denied only (1) when the amendment would be prejudicial to the opposing party, (2) there has been bad faith on the part of the moving party, or (3) the

amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile under Rule 15 if it would not survive a motion to dismiss for failure to state a claim. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Thus, it would be futile for the court to grant leave to amend a complaint when the proposed amendment is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

## III. Discussion

### A. Fourteenth Amendment versus Eighth Amendment claims

As noted above, because Plaintiff's carceral status at the time in question is uncertain and may have changed during the period addressed in the complaint, it appears that both the Fourteenth and Eighth Amendments are plausibly applicable and more factual development is necessary. Thus, the court will address Plaintiff's allegations under both standards.

The Fourteenth Amendment Due Process Clause protects pretrial detainees from "governmental action" that is not "rationally related to a legitimate nonpunitive governmental purpose" or that is "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (internal quotation marks omitted). The Supreme Court emphasized that this "solely objective" standard must be applied to claims brought by pretrial detainees. *Id.* at 397-98. Then, in *Short v. Hartman*, 87 F.4th 593, 608-09 (4th Cir. 2023), the Fourth Circuit addressed this objective standard in the context of medical treatment claims and found it "impossible to reconcile" *Kingsley* with our subjective deliberate

indifference test for Fourteenth Amendment claims and "requires us to properly distinguish Eighth Amendment claims from Fourteenth Amendment claims[.]"

Thus, under the Fourteenth Amendment, "a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611.

Meanwhile, the Eighth Amendment standard has both objective and subjective prongs. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To sustain an Eighth Amendment claim, a prisoner must show "deliberate indifference" to a "sufficiently serious" deprivation concerning inmate health or safety. *Farmer*, 511 U.S. at 834. "A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain." *Rush v. VanDevander*, No. 7:08-cv-00053, 2008 WL 495651 (W.D. Va., Feb. 21, 2008) (citing *Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978)). Therefore, to succeed on an Eighth Amendment claim, a plaintiff must show that the defendant had actual

knowledge of the plaintiff's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. *Short*, 87 F.4th at 611.

Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant, or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Miltier v. Beorn*, 896 F.2d 846, 851-852 (4th Cir. 1990); *see also Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

A prisoner has no constitutional right to the treatment or provider of his choice. *See Estelle*, 429 U.S. at 105-06 ("[i]t is well established that an inmate has no constitutional right to have the treatment he prefers or the best medical treatment available."); *see also Gross v. Dudley*, No. 3:21-cv-805-HEH, 2022 WL 16922819, at *5 (E.D. Va. Nov. 14, 2022) ("an inmate not receiving the optimal level of treatment or the treatment they prefer cannot be the basis for a deliberate indifference claim."); *Goff v. Bechtold*, 632 F. Supp. 697, 699 (S.D.W. Va. 1986) ("Denial of a preferred course of treatment—if in fact such occurred here—does not infringe a constitutional right.") (citing *Layne v. Vinzant,* 657 F.2d 468, 473 (1st Cir. 1981) and *Gahagen v. Penn. Bd. of Probation and Parole,* 444 F. Supp. 1326 (E.D. Pa. 1978)); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not

sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Nonetheless, preventing an inmate from receiving recommended treatment or denying an inmate access to medical personnel capable of evaluating the need for treatment evinces deliberate indifference to the inmate's medical needs. *Cox v. District of Columbia*, 834 F. Supp. 439, 442 (D.D.C. 1992). "Such indifference can also be manifested by prison doctors in their response to prisoner needs by the intentional denial or delay of access to medical care or the intentional interference with treatment once prescribed." *Id.* (citing *Estelle*, 429 U.S. at 104-05). Thus, an allegation of intentional withholding of medication alone may support a reasonable inference of deliberate indifference. *Scott v. Clarke*, No. 3:12-cv-00036, 2012 WL 6151967, *5 (W.D. Va. Dec. 11, 2012). Additionally, the Fourth Circuit has rejected the notion that simply because medical staff have provided an inmate with "some treatment" that "they have necessarily provided the inmate with constitutionally adequate treatment." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

B. *Monell* liability.

Because Wexford is a contracted medical provider for the WVDCR and MCCC, which are state or local government entities, the deliberate indifference standard is applicable to the conduct of Wexford and its employees. *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law"). However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original). Thus, a successful *Monell* claim must connect the alleged violation of a federal right to an official policy or custom of the defendant. *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

Generally, a *Monell* policy or custom may be established in one of four ways: (1) an express policy issued by the corporation's policymakers; (2) a decision of a policymaking official; (3) a corporate omission manifesting deliberate indifference to federal rights; and (4) a practice that "is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *See Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). A *Monell* "custom" must be based on a practice that is "so widespread as to have the force of law." *Brown*, 520 U.S. at 404.

Wexford argues that "the Supreme Court has urged particular caution where *Monell* liability is premised on either deliberate indifference or on custom." [ECF No. 25 at 9, citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)]. To prevent the corporation from being held liable merely because of an employee's conduct, the plaintiff must meet demanding standards of culpability and causation. [*Id.*] Thus, according to Wexford, the plaintiff must identify a particular deficiency—or deficiencies—so serious that the alleged violation was virtually inevitable at some point. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). [*Id.*] A plaintiff cannot establish either the relevant policy or custom, or the required causal link, simply by proving the single violation at issue. *Id.* at 1388. [*Id.*]

Wexford contends that Plaintiff's complaint fails to adequately allege that it maintained an official policy or custom in denying treatment for OUD. Wexford contends that Plaintiff was offered and received naltrexone, an approved drug for the treatment of OUD while at MCCC and, more importantly, was prescribed Suboxone when he was transferred to HCC, another facility where Wexford was the medical provider. Thus, Wexford claims that it could not have maintained an "unjustified policy and practice of denying MOUD" when it ultimately provided Plaintiff with the medication he sought. [*Id.* at 9-10]. It asserts that "[t]he fact that Plaintiff was prescribed Suboxone upon arrival at HCC demonstrates that no uniform Wexford-wide policy exists that bars the use of Suboxone or other forms of MOUD." [*Id.*] Wexford further contends that "[a] plaintiff cannot plausibly allege the existence of a system-wide, official policy when his own allegations show that the same entity

delivered the supposedly prohibited treatment at another facility." [*Id.* at 10]. Consequently, Wexford maintains that Plaintiff has failed to adequately plead a *Monell* claim and, thus, Wexford's dismissal as a defendant herein is warranted. [*Id.*]

Significantly, though, Wexford ignores the fact that Plaintiff alleges that he went nearly a year and a half without <u>any</u> MOUD treatment, which he contends was pursuant to Wexford's forced detoxification policy or custom. Thus, to the extent that Wexford has asserted that Plaintiff simply disagrees with the judgment of his medical providers in prescribing naltrexone instead of Suboxone and, therefore, cannot demonstrate deliberate indifference to a serious medical need, that argument fails at this stage of the proceedings. Moreover, Plaintiff specifically alleges that he was told by Wexford personnel that he "would never get" the MOUD treatment sought while at their facility.

Taking Plaintiff's allegations as true, a jury could find that Wexford denied him any MOUD, at least from March 2022 to September of 2023, and that, during that time, Wexford staff were aware of the substantial risk of serious harm posed by the failure to treat Plaintiff's OUD and the physical and emotional harm he suffered as a result. Such allegations state a plausible claim for relief under both the objective reasonableness standard of the Fourteenth Amendment and the deliberate indifference standard of the Eighth Amendment. Additionally, Plaintiff has specifically pled that the denial of MOUD, which he was previously receiving, was done in accordance with Wexford's "policy or standard practice" to "forcibly withdraw[] people on MOUD even when the patient had previous prescriptions and

with valid court orders." [ECF No. 2 at 10, ¶ 53]. As recently noted by another judge of this Court:

> Although proving a policy or custom under *Monell* is quite difficult, pleading one is less so. *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014). A plaintiff need not "detail the facts underlying his claims, or . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan,* 15 F.3d at 339. In this context, as in others, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Owens,* 767 F.3d at 403.

*Graening v. Wexford Health Sources, Inc.*, No. 1:20-cv-00400, 2022 WL 2070633, at *1 (S.D.W. Va. June 8, 2022) (Faber, S.J.).

At this stage of the proceedings, I **FIND** that Plaintiff has plausibly asserted claims against Wexford under both the Fourteenth and Eighth Amendments that warrant further development. Consequently, I further **FIND** that Plaintiff's motion to amend his complaint to assert a claim under the Eighth Amendment is not futile.

## IV. Conclusion

For the reasons stated herein, Plaintiff's Motion to Amend Complaint [ECF No. 35] is **GRANTED** and Wexford's Motion to Dismiss [ECF No. 24] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 28, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE